**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 20-490-DLB**

**JAMES ANDREW STRONG**                                             **PLAINTIFF**

**v.**              **MEMORANDUM OPINION AND ORDER**

**KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration**                    **DEFENDANT**

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

This matter is before the Court on Plaintiff James Andrew Strong's Motion for Summary Judgment, (Doc. # 11), pursuant to 42 U.S.C. § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Commissioner of Social Security. Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("SSA"), filed a Cross Motion for Summary Judgment. (Doc. # 13). The Court, having reviewed the administrative record and the parties' motions, and for the reasons set forth herein, **affirms** the Commissioner's decision.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On December 17, 2018, Andrew Strong filed an application for Disability Insurance Benefits under Title II of the Social Security Act alleging disability as of a week prior: December 10, 2018. (Tr. 173-174). His claim was denied at the initial level and upon reconsideration. (Tr. 75-100, 103-106, 108-114). Strong appealed and testified at an administrative hearing before Administrative Law Judge ("ALJ") Jeffery D. Morgan, who denied Strong's appeal on May 22, 2020. (Tr. 36). Specifically, ALJ Morgan found

1

that that Strong was not disabled under the Social Security Act and thus not entitled to benefits. (*Id.*). The decision became final on November 16, 2020, when the Appeals Council denied Strong's request for review. (Tr. 3).

## II.  DISCUSSION

### A.  Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Hum. Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported

by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

>    **B.    The ALJ's Determination**

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, ALJ Morgan found that Strong had not engaged in substantial gainful activity since the alleged onset disability date of December 10, 2018. (Tr. 22). At Step Two, ALJ Morgan determined that Strong had the following severe impairments: degenerative disc disease and arthropathy of the cervical spine with radiculopathy; degenerative disc disease and arthropathy of the lumbar spine with scoliosis; carpal tunnel syndrome; obesity, depressive disorder, and somatic symptom disorder. (*Id.*). At Step Three, ALJ Morgan determined that Strong did not have any impairment or combination of impairments that meet or medically equal the severity of any of the listed

3

impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 23).

ALJ Morgan then determined that Strong possessed the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with the following modifications and limitations:

> [The claimant] must be permitted to use a cane for ambulation; he is able to occasionally climb, stoop, kneel, crouch, and crawl; occasionally reach overhead; frequently handle and finger; must avoid exposure to hazards, such as unprotected heights and dangerous moving machinery; he can understand, remember, and carry out simple, routine instructions; and must avoid fast-paced production-rate work.

(Tr. 24-25).  ALJ Morgan concluded at Step Four that Strong was unable to perform any past relevant work as a maintenance engineer.  (Tr. 34).

At Step Five, ALJ Morgan concluded that due to Strong's age, education, work experience, and RFC, a significant number of jobs exist in the national economy that he can perform.  (Tr. 35).  Based on the opinion of a Vocational Expert ("VE"), ALJ Morgan determined that Strong could perform several occupations, such as general office clerk, information clerk, and interviewer, despite his limitations.  (Tr. 35-36).  Consequently, ALJ Morgan concluded that Plaintiff was not disabled as defined by the Social Security Act at any time from December 10, 2018, through the date of the decision.  (Tr. 36).

   **C.   Analysis**

Strong argues that ALJ Morgan's decision was not supported by substantial evidence because (1) the VE's testimony was rendered faulty when ALJ Morgan provided an RFC that did not adequately describe Strong and (2) ALJ Morgan improperly accepted the VE's testimony.  (Doc. # 11-1 at 1).

4

### *1.   ALJ Morgan's Determination of Strong's RFC*

Specifically, Strong argues that ALJ Morgan's RFC finding was deficient because ALJ Morgan failed to include sufficient limitations for (1) balancing; (2) proper use of the cane as prescribed; (3) mental limitations assessed by the examining and non-examining state agency physicians; and (4) adequate limitations for carpal tunnel syndrome, which ALJ Morgan determined was a severe impairment.  (*Id.* at 2).

Strong's first and second arguments both rely on ALJ Morgan's rejection of treating physician Dr. June Abadilla's medical opinion and statement forms.  (*Id.* at 2-5).  Dr. Abadilla filled out two checkbox type forms, provided by Strong's lawyer, indicating Strong's various limitations and need for a cane.  (Tr. 72-73, 590, 592).  ALJ Morgan found these forms unpersuasive because they were "inconsistent with evidence, including [Dr. Abadilla's] contemporaneous progress notes, which do not reflect such extreme limits; and [are] inconsistent with observations of normal and unremarkable gait and no weakness in lower extremities."  (Tr. 33).  To support his conclusion, ALJ Morgan cited to various medical reports that indicated Strong had good standing balance, normal gait, and noted his ability to get up from a low-sit chair.  (Tr. 260, 337, 596).

Unfortunately for Strong, it is not appropriate for this Court to resolve conflicts in the evidence or decide questions of credibility.  *Cutlip*, 25 F.3d at 286.  As for whether these conflicting reports constitute substantial evidence, the Court finds that they do.  In considering medical opinions, supportability and consistency are the most important factors for an ALJ to consider, which ALJ Morgan did.  *See* 20 C.F.R. § 404.1520c (noting that supportability and consistency are the most important factors in evaluation of medical opinions).  First, in 2018, during a physical exam it was noted that Strong

5

had "good standing balance," (Tr. 260); then in 2019 during his psychological assessment, it was documented that his "posture and gait were unremarkable," and that he "walked without support and winced in pain when he sat down and after sitting for a while," (Tr. 337); and finally in 2020 during a follow-up visit for his back pain it was observed that he was able to get up from a low-sit chair, that he did not appear to have any significant weakness, and that his gait was normal (Tr. 596).  These reports indicate that Strong could balance.  Moreover, ALJ Morgan did not think Dr. Abadilla's opinion, as conveyed on the forms provided to her by Strong's lawyer, was consistent nor supported by other evidence.  *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 471 (6th Cir. 2014) (noting that a treating physician's opinion is not entitled to "any particular weight" when it is provided on a questionnaire and fails to incorporate medical findings such as test results or treatment notes).  As such, ALJ Morgan's decision to disregard Dr. Abadilla's opinion on those forms in formulating Strong's RFC was supported by substantial evidence.

Next, Strong points out that ALJ Morgan omitted mental limitations in Strong's RFC that were favorable to him.  (Doc. # 11-1 at 6).  Strong focuses on ALJ Morgan's consideration of both state agency physicians Dr. Robert Genther and Dr. Danelle Stevens-Watkins' opinions.  (*Id.* at 6-7).  On May 16, 2019, Dr. Genther examined Strong and diagnosed him with somatic symptom disorder and adjustment disorder with depressed mood.  (Tr. 342).  Dr. Genther also made the following conclusions about Strong's mental limitations: Strong's capacity to retain and follow simple instructions was below average; Strong was mild to moderately limited in his ability to understand, retain and follow detailed or complex instructions; his ability to carry out and persist at simple

6

repetitive tasks without supervision was moderately to markedly limited; his attention/concentration skills were mild to moderately limited; his capacity to relate to employers or coworkers was mildly limited along with his capacity to work with others without being distracted; his capacity to deal with the public was mild to moderately limited; simple changes in routine may at times be overwhelming; he had adequate capacity to make simple work-related decisions; his ability to be aware of normal hazards and take appropriate precautions was adequate; and his capacity to tolerate stress and pressure associated with day-to-day work activity was moderately limited. (Tr. 343-344).

On June 15, 2019, Dr. Stevens-Watkins reviewed the medical evidence and found that Dr. Genther's opinion of "marked limitations [was] not at all consistent and not persuasive. This is largely based on [claimant's] self-report as opposed to objective findings." (Tr. 97). She found that Strong's self-report was only partially persuasive. (*Id.*). She further found that Strong's functional limitations were largely related to his alleged physical impairments and complicated by his pain. (*Id.*). Dr. Stevens-Watkins' conclusions were that Strong was able to: understand and remember simple, routine instructions; carry out simple, routine instructions and concentrate and persist for at least simple tasks; tolerate object-focused settings in which contact with supervisors/coworkers was occasional and superficial with public contact as needed; and adapt to the familiar and expected changes and pressures of a routine work setting not involving fast-paced production-rate work. (Tr. 97-98).

ALJ Morgan found Dr. Genther's medical opinion unpersuasive because it was not supported by his own exam findings, and he conflated cognitive limitations due to pain with limitations directly related to Strong's alleged mental impairments. (Tr. 33).

7

ALJ Morgan also noted that Dr. Genther's definitions of terms, such as "moderately limited," were inconsistent with the definitions of the same/similar terms as defined in the SSA listings for mental impairments.[1] (*Id.*). Additionally, ALJ Morgan took issue with the ambiguity of Dr. Genther's findings that Strong was "moderately to markedly" limited in certain abilities as vague and susceptible to multiple interpretations. (Tr. 34).

As for Dr. Stevens-Watkins' opinion, ALJ Morgan found it partially persuasive "inasmuch as restrictions in the area of social interaction [are] inconsistent with evidence of record (see function report and claimant's statements during consultative examination) and with Dr. Stevens-Watkins' own acknowledgment in psychiatric review technique that the claimant has only mild limits in this area." (*Id.*). During the consultative exam with Dr. Genther, Strong relayed that he socializes with family members and that "his coworkers were his best friends. He stated that he always gets along well with his neighbors and co-workers." (Tr. 341). Indeed, the function report Strong provided on his own behalf indicated under the social activities section, that he goes to his parents' house to socialize and eat dinner (Tr. 209), that he socializes daily (Tr. 213), and that he does not go to sporting events, parks, or anywhere that requires excess walking/sitting anymore but does not indicate he is limited in his ability to socialize (Tr. 214).

Strong takes issue with ALJ Morgan's disregard of the rest of Dr. Stevens-Watkin's findings, specifically the finding that Strong was moderately limited in his ability

---

[1] For example, Dr. Genther's definition of a "moderate" limitation was "claimant would require significant structure and/or modifications in traditional work settings such as those found in a sheltered workshop." (Tr. 341). However, SSA defines a "moderate" limitation as one where "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00 F.2.

8

to interact appropriately with the general public and moderately limited in his ability to respond appropriately to criticism from supervisors. (Doc. # 11-1 at 7); (Tr. 97). Strong argues that because ALJ Morgan was required to consider all relevant impairments, including ones that are non-severe, it was inappropriate to omit limitations in interacting with others in the RFC. (Doc. # 11-1 at 7-8). However, "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (citations omitted). ALJ Morgan is also not required to "explain each limitation or restriction he adopts, or conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11-CV-2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013). Therefore, ALJ Morgan did not err in finding Dr. Stevens-Watkins' opinion partially persuasive as Strong's own statements supported ALJ Morgan's conclusion that he was not socially limited. Furthermore, ALJ Morgan did accept—and incorporate into the RFC—some of Dr. Stevens-Watkins' proposed limitations: he can understand, remember, and carry out simple, routine instructions; and must avoid fast-paced production-rate work. (Tr. 24-25, 97-98). ALJ Morgan was not required to explain each limitation he refused to adopt; however, he did indicate that Strong's own statements in the function report and consultative exam contradicted a finding that he was socially limited. *Smith*, 2013 WL 1150133, at *11; (Tr. 34).

Subsequently, Strong argues that the manipulative limitations ALJ Morgan included in Strong's RFC were lacking and not supported by substantial medical

9

evidence. (Doc. # 11-1 at 8-10). First, Strong stresses that ALJ Morgan's finding that he was limited to frequently handling and fingering was in contradiction of Dr. Abadilla's finding that he was limited to occasionally using his right and left hands because of his carpal tunnel syndrome. (*Id.* at 9); (Tr. 25, 592). Second, Strong contends that ALJ Morgan failed to include limitations for feeling in the RFC even though Strong testified that he had neck pain that ran down his shoulder, arms, and hands with a numb, burning, and aching feeling. (Doc. # 11-1 at 9).

As for Dr. Abadilla's opinion that Strong was limited to occasional use of his hands, that finding was expressed as a check mark on the forms provided by Strong's lawyer discussed above, which ALJ Morgan determined was unpersuasive and inconsistent with the evidence. (Tr. 33, 592); *see Curler*, 561 F. App'x at 471. ALJ Morgan pointed out that Dr. Abadilla also found that Strong exhibited fair grip in both hands, that Strong indicated his symptoms were "not that bad" at a follow-up appointment, and that Strong delayed following Dr. Abadilla's instructions, such as getting wrist splints and starting physical therapy. (Tr. 29, 510, 601). As noted above, it is inappropriate for this Court to resolve conflicts in the evidence or decide questions of credibility such as this. *Cutlip*, 25 F.3d at 286. Because there was evidence in the record that Strong's carpal tunnel symptoms were not as severe of a limitation as Dr. Abadilla indicated, it was not unreasonable for ALJ Morgan to omit it from Strong's RFC.

Strong also posits that ALJ Morgan erred by failing to include "any limitations for feeling, even though Mr. Strong testified he had numbness in his hands, fingers and decreased grip." (Doc. # 11-1 at 10). However, none of the jobs identified by the vocational expert require any feeling. *Dictionary of Occupational Titles*, 222.587-038,

10

Router, 1991 WL 672123 ("Feeling: Not Present – Activity or condition does not exist); 237.367-018, Informational Clerk, 1991 WL 672187 (same); 205.367-054, Survey Work, 1991 WL 671725 (same). Because the result would be the same with or without a limitation for feeling, remand is unnecessary. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007) ("We are not required to remand where to do so would be an idle and useless formality.").

For all these reasons, Strong's arguments that the RFC presented to the VE inaccurately described Strong fail because the RFC did describe his physical and psychological impairments rather than enumerate all of his maladies. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239-240 (6th Cir. 2002).

### 2. *Vocational Expert's Testimony*

Strong's final argument is that ALJ Morgan improperly accepted the VE's testimony, which was inconsistent with the SSA's definition of light work. (Doc. # 11-1 at 11). The testimony that Strong focuses on is the VE's assertion that Strong could use a cane while performing light work, which Strong finds illogical as light work requires that he frequently walk and carry up to twenty pounds. (*Id.* at 12); (Tr. 69). Strong relies on *Love v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 893, (W.D. Mich. Mar. 4, 2009), to argue that it is illogical to determine that a claimant who needs a handheld assistive device could carry twenty pounds. (Doc. # 11-1 at 12). Indeed, the court in *Love* held that there was a "fundamental illogic" to the conclusion that the claimant could carry twenty pounds despite the need of a hand-held assistive device to ambulate. 605 F.Supp. 2d at 907.

11

However, *Latham v. Comm'r of Soc. Sec.*, No. 16-CV-10690, 2017 WL 1173773 (E.D. Mich. March 30, 2017), clearly explains why Strong is incorrect in his interpretation of the conflict between light work and use of a cane. First, light work only requires the claimant to *lift* twenty pounds at a time and *lift and carry* up to ten pounds at a time, which is contrary to Strong's assertion that he would have to regularly carry twenty pounds. *Latham*, 2017 WL 1173773, at *2. Like the plaintiff in *Latham*, Strong is "patently wrong" in his interpretation that he must be able to "lift and carry weights up to 20 pounds" to perform light work. *Id.*; (Doc. # 11-1 at 12). Second, the *Latham* court points out that "*Love* says nothing about the logic of the limitation of the use of a cane to ambulate and a limitation of carrying up to 10 pounds," which is considered light work. 2017 WL 1173773, at *2. Indeed, the *Love* court focused on the ALJ's explicit finding that the plaintiff could lift and carry up to twenty pounds, but that is not part of ALJ Morgan's findings here as light work does not require carrying twenty pounds nor did he include that in Strong's RFC. 605 F. Supp. 3d at 907 ("The ALJ found that . . . [p]laintiff was capable of performing work, subject to the following limitations: (1) he can lift and carry up to 20 pounds . . . .").

The Court agrees with the reasoning in *Latham* that "[b]ecause substantial evidence supported the ALJ's finding that [plaintiff] did not need a cane for balance but only to *ambulate*, the RFC for light work, which . . . does not require [plaintiff] to *carry* up to 20 pounds, is not internally inconsistent with the restriction of a cane for ambulation." 2017 WL 1173773, at *2. Similarly, as discussed above, *supra* II.C.1., ALJ Morgan's decision that Strong could balance without a cane is supported by substantial evidence. Therefore, Strong's RFC, which included use of a cane for

ambulation, did not render the VE's testimony that he could perform light work unreliable.

Besides, other courts have held that use of a cane does not preclude a claimant from performing light work. *Marko v. Comm'r of Soc. Sec.*, No. 2:16-CV-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) ("Case law in this district has found that the use of a cane does not preclude light work.") (citations omitted); *see also McCloud v. Comm'r of Soc. Sec.*, No.13-14619, 2015 WL 12684332, at *1 (E.D. Mich. March 18, 2015) (adopting the finding that claimant could perform light work despite the RFC including "use of a cane to ambulate distances greater than 50 feet."). Therefore, the VE's testimony was not inconsistent with agency regulations.

### III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

(2)   Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3)   The Commissioner's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED**;

(4)   This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5)   A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 31st day of May, 2022.



K:\DATA\SocialSecurity\MOOs\Lexington\20-490 Strong MOO.docx